**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UPPER ECHELON ENTERTAINMENT LLC, AQUIL
HILLS, AZARIAH YEMMA, and HASAN STEPHENS,

                              Plaintiffs,

v.                                                                                  5:22-cv-659 (BKS/ML)

THE STATE OF NEW YORK, NEW YORK
DEPARTMENT OF AGRICULTURE AND MARKETS,
THE NEW YORK STATE FAIR, and JOHN DOES 1–10,

                              Defendants.

---

**Appearances:**

*For Plaintiffs:*
Albert M. Saltz
Saltz Nalibotsky
101 Lindenwood Drive, Suite 225
Malvern, Pennsylvania 19355

*For Defendants State of New York,*
*New York Department of Agriculture and Markets,*
*and New York State Fair:*
Letitia James
Attorney General of the State of New York
Aimee Cowan
Assistant Attorney General, of Counsel
300 South State Street, Suite 300
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs Upper Echelon Entertainment LLC, Aquil Hills, Azariah Yemma, and Hasan

Stephens bring this action against Defendants State of New York, New York Department of

Agriculture and Markets, and New York State Fair ("State Defendants"), as well as ten

unidentified John Doe individuals employed by the State of New York, New York Department

of Agriculture and Markets, or New York State Fair. (Dkt. No. 16, ¶¶ 1–8.)[1] In their verified first

amended complaint, Plaintiffs assert claims under 42 U.S.C. § 1983, § 1985, and § 1986, as well

as state-law claims based on breach of contract; New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law § 296; and tortious interference with business relationships. (*Id.*

¶¶ 30–71.) Plaintiffs seek compensatory and punitive damages. (*Id.* at ¶¶ 5, 7–11.) Presently

before the Court is State Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure. (Dkt. No. 20.) The motion is fully briefed. (Dkt. Nos.

21, 22.) For the following reasons, the Court grants State Defendants' motion to dismiss.

## II.    FACTS[2]

Plaintiffs are a music promoter company and three of its members based in Syracuse,

New York. (Dkt. No. ¶¶ 1–4, 11.) Plaintiffs executed a contract with Defendant New York

Department of Agriculture and Markets that allowed Plaintiffs to stage a concert by the hip-hop

performer Young Thug at the Exposition Center at the New York State Fairgrounds on

December 31, 2021 ("the original contract"). (*Id.* ¶¶ 10, 12, 23, 53, 59, 66.)[3] After executing that

contract, Plaintiffs allege they negotiated a separate agreement with "employees of Defendants"

pursuant to which Plaintiffs paid Defendants for "typical advertisement of the event" and

"ticketing functions" ("advertising contract"). (*Id.* ¶¶ 14–15, 31.) But, Plaintiffs allege,

Defendants failed to fulfill their obligations by failing to advertise or announce the concert at the

---

[1] Plaintiffs initiated suit in the New York Court of Claims by filing a verified claim. (Dkt. No. 1-3.) State Defendants removed the action to this Court by notice of removal on June 21, 2022, based on federal question jurisdiction. (Dkt. No. 1.)

[2] These facts are drawn from the verified first amended complaint. (Dkt. No. 16.) The Court assumes the truth of the well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[3] Plaintiffs refer to this contract as "Exhibit A" in their first amended complaint, (*id.* ¶ 12), but failed to attach any exhibit.

venue on the day of the show, failing to provide ticketing information on the New York State

Fair website, providing incorrect information about the concert on the New York State Fair

website, and prematurely removing concert information from the New York State Fair website.

(*Id.* ¶¶ 17–20, 33, 39, 69.) Defendants "also required additional, unreasonable, and unnecessary

security" from "local police units, who . . . refused to provide [it]." (*Id.* ¶ 21, 33, 39, 48, 69.)

Such additional security "was not required of other musical acts of comparable size." (*Id.* ¶ 52.)

As a result of Defendants' actions and inactions, potential concertgoers "express[ed] confusion

over the show time, how to purchase tickets, and other logistical issues[,] which should have

been resolved by Defendants well in advance of the date of the concert," and Plaintiffs were

forced to pay for additional security. (*Id.* ¶¶ 25, 28.) Though the Exposition Center holds over

5000 people, and though "Young Thug . . . routinely sells out arenas similar to and larger than

the Exposition Center," Plaintiffs were only able to sell approximately 600 tickets. (*Id.* ¶¶ 13, 24,

26.)

　　　Plaintiffs allege that Defendants' "actions were deliberate by Defendants due to a

discriminatory intent towards the type of music and racial clientele for a Young Thug concert as

opposed to a KRock concert." (*Id.* ¶ 22.) Plaintiffs also allege that Defendants' actions were

driven by "racial animus towards Plaintiffs and the hip hop concert they were attempting to

perform" and that certain "Defendants were aware this was occurring and failed to intervene."

(*Id.* ¶¶ 53–54, 59, 66.) Elsewhere in the first amended complaint, Plaintiffs allege that

"Defendants discriminated against Plaintiffs due to their race, the race of the proposed

performer, and the perceived race of the anticipated crowd for the concert." (*Id.* ¶ 63.) Plaintiffs

support these contentions by alleging that an employee of Defendants informed Plaintiffs that

"these problems only arise for hip-hop concerts and that 'racism and discrimination [are] alive and well.'" (*Id.* ¶¶ 23, 55, 60, 67.)

As a result of Defendants' actions and inactions, Plaintiffs suffered financial losses stemming from payments to "the artist, venue, and security." (*Id.* ¶ 28.) Plaintiffs also suffered financial losses as a result of the poor "ticket sales, including [sales of] premium tickets and a planned meet and greet [that] could not occur." (*Id.*)

## III.    STANDARD OF REVIEW

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon*, 752 F.3d at 243 (citation omitted). A court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all

reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## IV.   ANALYSIS

### A.   Matters Outside the Pleadings

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). A contract that forms the basis of a plaintiff's claims may, as State Defendants argue, be integral to a complaint for breach of contract. *See, e.g., United States ex rel. Foreman v. AECOM,* 19 F.4th 85, 107–108 (2d Cir. 2021).

However, even where a document is integral to the complaint, it must be "clear" that "no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134. "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all

parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)).

Here, State Defendants have attached what they assert is "the subject contract with appendices" in support of their motion to dismiss under Rule 12(b)(6). (Dkt. No. 20-2, at 2; Dkt. No. 20-3). Though Plaintiffs refer to a December 31, 2021, contract in the first amended complaint—and seemingly intended but failed to attach that contract as an exhibit—Plaintiffs allege that they subsequently executed "another agreement . . . with employees of the Defendants for typical advertisement of the event," (Dkt. No. 16 ¶ 14), of which they do not have a copy, (*id.* ¶ 16); Plaintiffs also later allege that they entered into "multiple agreements" with State Defendants which were breached, (*id.* ¶¶ 31, 33, 36). Neither party has referred to any language in the contract submitted by State Defendants that would be of assistance to the Court in resolving this motion. Nor have Plaintiffs addressed whether the contract submitted by State Defendants is a complete and accurate copy of the parties' original contract. On this record, where the entirety of the parties' contractual arrangement as alleged in the first amended complaint is not before Court, and the alleged contractual provisions at issue are not in the contract submitted by State Defendants, the Court does not consider the contract attached to State Defendants' motion.[4]

### B.    "Person" Under 42 U.S.C. § 1983, § 1985, and § 1986

State Defendants argue that they are not "persons" within the meaning of 42 U.S.C. § 1983, § 1985, or § 1986 and that the Court must therefore dismiss Plaintiffs' claims against

---

[4] The Court will not consider the new factual allegations Plaintiffs make in their opposition to State Defendants' motion or in Plaintiffs' counsel's declaration. (Dkt. Nos. 21, 21-1.) A court cannot rely on affidavits or "factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss," *Foreman,* 19 F.4th at 107 (quoting *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000)), *cert. denied*, 142 S. Ct. 2679 (2022).

State Defendants brought under these statutes. (Dkt. No. 20-1, at 13–15, 18.)[5] Plaintiffs agree

that their federal claims are barred as against State Defendants. (Dkt. No. 21, at 10, 14

("Plaintiffs agree that the entities they have been able to identify at this time cannot be sued

under 1983. . . . The only substantive arguments Defendants have made relate to the applicability

of Sections 1983, 1985, and 1986 to entity defendants, with which Plaintiffs agree.").) So does

the Court.

      Defendants New York Department of Agriculture and Markets and New York State Fair

are agencies of Defendant State of New York. *See* N.Y. Agric. & Mkts. Law §§ 4, 31-a. A state

agency is not a person within the meaning of § 1983, § 1985, or § 1986. *See Reynolds v. Barrett*,

685 F.3d 193, 204 (2d Cir. 2012) ("[N]either a state nor a state official in his official capacity is a

'person' within the meaning of § 1983 . . . ." (citing *Will v. Mich. Dep't of State Police*, 491 U.S.

58, 71 (1989))); *Rosa v. Comm'n on Hum. Rts. & Opportunities*, No. 22-cv-893, 2022 WL

3043547, at *2 & n.2, 2022 U.S. Dist. LEXIS 136815, at *3 & n.2 (D. Conn. Aug. 2, 2022)

("Only a 'person' can be sued under 42 U.S.C. § 1983. A state agency is not a 'person' who can

be sued for damages within the meaning of § 1983. . . . Even if the Court construed the

Complaint as being brought pursuant to § 1985 and § 1986, '[b]y its terms, 42 U.S.C. § 1985

also applies only to persons, and the same reasoning underlying *Will*, 491 U.S. at 71, applies to

suits brought under § 1985.'" (quoting *Evans v. N.Y. State Dep't of Health*, 189 F.3d 460 (2d Cir.

1999) (unpublished table decision))). Accordingly, Plaintiffs' claims against Defendants State of

---

[5] State Defendants appear to argue that since they are not "persons' within the meaning of § 1983, § 1985, or § 1986, dismissal is appropriate under Rule 12(b)(1) for lack of subject-matter jurisdiction. (Dkt. No. 20-1, at 13–15, 18.) It is not clear from the cases State Defendants cite whether this argument is properly made under Rule 12(b)(1) or Rule 12(b)(6). In any event, Plaintiffs agree that dismissal is appropriate, and the Court need not decide whether Rule 12(b)(1) or Rule 12(b)(6) is more properly the standard. *See, e.g.*, *Mercer v. Schriro*, 337 F. Supp. 3d 109, n.16 (D. Conn. 2018) (noting that the court "need not decide whether Rule 12(b)(1) or Rule 12(b)(6) is more properly the standard to dismiss a § 1983 claim against a state official in his official capacity for damages because in this case, the Court has not been presented with or considered any evidence outside the pleadings, which would only be appropriate on a Rule 12(b)(1) motion or Rule 56 motion for summary judgment").

New York, New York Department of Agriculture and Markets, and New York State Fair brought under 42 U.S.C. § 1983, § 1985, and § 1986 are dismissed.[6]

### C.      Remaining State-Law Claims

#### 1.      Breach of Contract

State Defendants argue that Plaintiffs have failed to state a breach-of-contract claim because Plaintiffs have not alleged a breach of the original contract and have not sufficiently alleged the existence of the advertising contract or the "multiple agreements" allegedly breached. (Dkt. No. 20-1, at 10–12.) While the Complaint refers to the Defendants' breach of their obligations under the "agreements," Plaintiffs appear to argue that their breach-of-contract claim concerns solely the advertising contract; they further argue that, "without the benefit of the actual document which, upon information and belief, is in the possession, custody, or control of the Defendants," they have adequately pleaded the existence of that contract. (Dkt. No. 21, at 6–7.)

---

[6] Defendants' argument of this point is limited to their assertion that the named state agencies are not "persons" within the meaning of § 1983, § 1985, or § 1986. Although the cases they cite address both the proposition that a state is a not a person within the meaning of the aforementioned statutes as well as principles of Eleventh Amendment and general sovereign immunity, Defendants make no explicit reference to Eleventh Amendment immunity or to general sovereign immunity in their briefing. The Court notes that (1) Plaintiffs filed this action in the New York Court of Claims, the only forum in which New York has waived its immunity from liability and consented to be sued for money damages, *see Gollomp v. Spitzer*, 568 F.3d 355, 358 n.2 (2d Cir. 2009) ("The New York Court of Claims is the exclusive forum among New York's state courts for litigating claims for money damages against New York State." (citations omitted)), and (2) Defendants elected to remove this action from the New York Court of Claims to federal court, thereby waiving Eleventh Amendment immunity, *see Beaulieu v. Vermont*, 807 F.3d 478, 486 (2d Cir. 2015) ("[B]y removing a case from state court to federal court, a state defendant waives the right to rely on its Eleventh Amendment immunity from the federal court's judgment." (citing *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 619–620 (2002))). In any event, State Defendants' argument that they are not "persons" within the meaning of § 1983, § 1985, or § 1986 may serve as a basis for dismissal separately and distinctly from any consideration of immunity, *see Jones*, 166 F.3d at 49 (holding that, "even apart from Eleventh Amendment considerations," since "[state-agency defendants] are [not] 'persons' within the meaning of 42 U.S.C. § 1983," claims against them were properly dismissed); *see also Will*, 491 U.S. at 86 (1989) (Brennan, J., dissenting) ("[T]he question whether States are 'persons' under § 1983 is separate and distinct from the question whether they may assert a defense of common-law sovereign immunity").

In light of this ruling, the Court has not addressed other alleged deficiencies in the § 1983, § 1985 and § 1986 causes of action.

To state a breach-of-contract claim under New York law, a plaintiff must allege: "(1) the existence of a contract, (2) performance of the contract by the plaintiff, (3) breach by the defendant, and (4) damages suffered as a result of the breach." *Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 347 (S.D.N.Y. 2020), *aff'd*, No. 20-3344, 2022 WL 274507, 2022 U.S. App. LEXIS 2774 (2d Cir. Jan. 31, 2022). "A complaint 'fails to sufficiently plead the existence of a contract' if it does not provide 'factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms.'" *Emerald Town Car of Pearl River, LLC v. Philadelphia Indem. Ins. Co.*, No. 16-cv-1099, 2017 WL 1383773, at *7, 2017 U.S. Dist. LEXIS 56805, at *18 (S.D.N.Y. Apr. 12, 2017) (quoting *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand*, 455 F. App'x 102, 104 (2d Cir. 2012)). Conclusory allegations that a contract existed do not suffice. *Id.*

Here, Plaintiffs fail to sufficiently plead the existence of the "multiple agreements" allegedly breached by Defendants. Plaintiffs do not appear to have alleged terms of the original contract that were breached. To the extent Plaintiffs' claim is based upon the advertising contract, they appear to have pleaded that putative contract's major terms. (Dkt. No. 21, at 6.) But Plaintiffs allege that they "do not have a copy of this agreement," (Dkt. No. 16, ¶ 16), and have included no other information to sufficiently plead its existence. Plaintiffs have not pleaded *when* the contract was executed other than stating it was executed between the execution of the original contract (for which Plaintiffs provide no date) and the concert. (*Id.*; Dkt. No. 16, ¶¶ 12, 14.) Plaintiffs have not pleaded *what* they paid under the putative contract other than stating they "paid for and/or negotiated" for the advertising services. (Dkt. No. 16, ¶¶ 14–15, 32.) And Plaintiffs have not even pleaded *whom* the contract was between. (*See id.* ¶ 14 (alleging that "Plaintiffs made another agreement and arranged with employees of the Defendants for typical

advertising for the event"); ¶ 31 (alleging that Plaintiffs "entered into multiple agreements" with the State Defendants "for use of the Exposition Center as well as for use of common advertising and ticketing functions of same").) These deficiencies require dismissal of Plaintiffs' breach-of-contract claim. *See Ebomwonyi*, 473 F. Supp. 3d at 347–48; *see also Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 451 (S.D.N.Y. 2021) ("[T]he Complaint is bereft of factual content regarding [the putative contract] such as who agreed to it, . . . when it was agreed to[,] . . . and whether any consideration was exchanged for [it]. . . . In the absence of such allegations of fact, the Complaint fails to state a claim . . . ."). Accordingly, Plaintiffs' breach-of-contract claim is dismissed as to Defendants State of New York, New York Department of Agriculture and Markets, and New York State Fair.

### 2.        NYSHRL Section 296

State Defendants argue that Plaintiffs have failed to state a claim under NYSHRL section 296 because Plaintiffs fail to allege what "public accommodations" they were denied; because Plaintiffs fail to allege facts sufficient to give rise to an inference of discrimination; and because Plaintiffs have not alleged that any State Defendant "encouraged, condoned, or approved any discriminatory acts committed by any of their employees." (Dkt. No. 20-1, at 19–20.) Plaintiffs argue their allegation that an employee of Defendants "conceded to Plaintiffs that such issues arise only with hip hop concerts because of 'discrimination and racism'" makes it "reasonable to assume that such actions are systemic and well known to the government agency Defendants." (Dkt. No. 21, at 12.)

NYSHRL section 296 makes it unlawful for "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the race . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." N.Y.

Exec. Law § 296(2)(a). "At the pleading stage, a plaintiff is required to allege facts sufficient to give rise to an inference of discrimination." *Jones v. Beth Israel Hosp.*, No. 17-cv-3445, 2018 WL 1779344, at *12, 2018 U.S. Dist. LEXIS 62228, at *33 (S.D.N.Y. Apr. 12, 2018) (citations omitted). An employer cannot be held liable for an employee's discriminatory act under section 296 "unless the employer became a party to it by encouraging, condoning, or approving it." *Lyons v. Citi Trends, Inc.*, No. 21-cv-8365, 2023 WL 1821042, at *4, 2023 U.S. Dist. LEXIS 21618, at *9 (S.D.N.Y. Feb. 8, 2023) (quoting *Alexander v. Priv. Protective Servs., Inc.*, No. 19-cv-10004, 2021 WL 8445829, at *3, 2021 U.S. Dist. LEXIS 227001, at *8 (S.D.N.Y. Nov. 24, 2021), *report and recommendation adopted*, 2022 WL 1567447, 2022 U.S. Dist. LEXIS 89712 (S.D.N.Y. May 18, 2022)). "Absent plausible allegations that the employer encouraged, condoned, or approved the behavior at issue, [a court] may not infer [that] such facts [] exist." *Id.* (citing *Twombly*, 550 U.S. at 555).

Here the State Defendants assert that because "a concert *was* performed at the Exposition Center," Plaintiffs fail to allege what public accommodations they were denied. (Dkt. No. 20-1, at 20.) It is not clear that Plaintiffs have plausibly pleaded that they were denied public "accommodations, advantages, facilities or privileges" associated with the Exposition Center. Specifically, Plaintiffs have pleaded that they were denied advertising and ticketing functions on the website of Defendant New York State Fair. (Dkt. No. 16, ¶¶ 14, 17, 19, 20.) While the NYSHRL protects against the denial of public "services of any kind," even "without denying . . . access to any particular place," *see U.S. Power Squadrons v. State Hum. Rts. Appeal Bd.*, 452 N.E.2d 1199, 1204 (N.Y. 1983), the parties have not addressed whether the denial of advertising and ticketing alleged here would fall within the NYSHRL.

But in any event, Plaintiffs fall short of pleading facts that give rise to an inference of discrimination as they must to state a claim under NYSHRL. *See Jones*, 2018 WL 1779344, at *12, 2018 U.S. Dist. LEXIS 62228, at *33. Plaintiffs have not alleged in the first amended complaint that they are members of a protected class. Nor have they alleged that prospective concertgoers (or Young Thug) are members of a protected class. Plaintiffs' conclusory allegations that Defendants exhibited "discriminatory intent towards the type of music and racial clientele for a Young Thug concert," (Dkt. No. 16, ¶¶ 22, 48, 55, 59, 66), are insufficient to give rise of an inference of racial discrimination against Plaintiffs. *See Jones*, 2018 WL 1779344, at *12, 2018 U.S. Dist. LEXIS 62228, at *33. Nor have Plaintiffs alleged the races of others who were allegedly treated differently. The Court thus cannot plausibly infer that Plaintiffs were subjected to racial discrimination based upon Plaintiffs' mere mention, without expansion or explanation, of "a KRock concert," (Dkt. No. 16, ¶ 22), Plaintiffs' later oblique reference to "other musical acts of comparable size," (*id.* ¶ 52), and Plaintiffs' allegation that an unidentified employee of Defendants "conceded that these problems only arise for hip-hop concerts and that 'racism and discrimination [are] alive and well,'" (*id.* ¶ 23). Nor have Plaintiffs plausibly alleged that State Defendants, as employers, encouraged, condoned, or approved racially discriminatory behavior to establish employer liability for the discriminatory behavior of an employee, *see Lyons*, 2023 WL 1821042, at *4, 2023 U.S. Dist. LEXIS 21618, at *9 ("[Because] Plaintiff fails to provide any allegations that Defendant encouraged, approved, or condone[d] its employee's behavior towards Plaintiff[,] Plaintiff has failed to plead facts sufficient to support her allegations against Defendant under [section 296 of the New York Human Rights Law]."). Plaintiffs' claim under NYSHRL, N.Y. Exec. Law § 296, is therefore dismissed as to State Defendants.

### 3.      Tortious Interference with Business Relationships

State Defendants argue that Plaintiffs have failed to state a claim for tortious interference with a business relationship because Plaintiffs have not sufficiently alleged the existence of a business relationship with a third party, that any Defendant interfered with that relationship, that any Defendant acted for a wrongful purpose, and that any interference from a Defendant injured an existing business relationship. (Dkt. No. 20-1, at 21–24.) Plaintiffs appear to argue that they had an existing business relationship with potential concertgoers and the public at large, that Defendants' behavior in failing to adequately advertise the concert interfered with those relationships, that Defendants' racial animus toward "Plaintiffs, Young Thug, and prospective concert attendees" demonstrates a wrongful purpose, and that this behavior resulted in Plaintiffs selling only 600 tickets for a 5000-seat facility. (Dkt. No. 21, at 13–14.)

Under New York law, a claim for tortious interference with a business relationship is identical to a claim for tortious interference with prospective economic advantage. *See Katz v. Travelers*, 241 F. Supp. 3d 397, 404 (E.D.N.Y. 2017). To state a claim for either, a plaintiff "must allege that: '(i) the plaintiff had business relations with a third-party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship.'" *Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 372 (N.D.N.Y. 2021) (quoting *Clean Coal Tech., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 321–22 (S.D.N.Y. 2019)). "A plaintiff must also establish causation by demonstrating 'that she would have entered into an economic relationship but for the defendant's wrongful conduct.'" *Id.* (quoting *Clean Coal Tech.*, 525 F. Supp. 3d at 322). While a plaintiff need not allege the breach of an existing contract to plead a claim for tortious interference with a business relationship, the plaintiff must demonstrate that a defendant's wrongful conduct meets the "more culpable conduct" standard. *See id.* (quoting

*Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004)). That is, "as a general rule, the defendant's conduct must amount to a crime or an independent tort" or must be "for the sole purpose of inflicting intentional harm on plaintiffs." *Carvel*, 818 N.E.2d at 1103. Sufficiently pleading such wrongful conduct is a "high bar." *See Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 268 (E.D.N.Y. 2016) (quoting *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015)). Additionally, a defendant's wrongful conduct must be directed not at the plaintiff, "but at the party with which the plaintiff has or seeks to have a relationship." *Exec. Trim Constr.*, 525 F. Supp. 3d at 373 (quoting *Carvel*, 818 N.E.2d at 1103).

Here, most fatally, Plaintiffs have not pleaded the existence of a business relationship with any third party. Allegations of a hypothetical business relationship with prospective concert attendees or the general public are insufficient. *See Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 535 (E.D.N.Y. 2017) ("[Plaintiff does not] identif[y] any 'specific business relationship[] with which [the defendant] allegedly interfered,' other than the generic reference to . . . customers." (quoting *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402 (S.D.N.Y. 2012))); *see also POSCO Energy Co. v. FuelCell Energy, Inc.*, 560 F. Supp. 3d 747, 760 (S.D.N.Y. 2021) ("'[P]rospective contractual relationship[s]' with 'third party purchasers in the trading market' are too vague and conclusory to state a tortious interference claim." (quoting *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 227–28 (S.D.N.Y. 2013))). Though Plaintiffs allege that "Young Thug . . . routinely sells out arenas similar to and larger than the Exposition Center" and that as a result of Defendants' conduct, Plaintiffs "sold approximately 600 tickets for a venue which holds over 5000," (Dkt. No. 16, ¶¶ 13, 24), Plaintiffs fail to identify any "concrete relationship" with which Defendants interfered. *See Camelot SI, LLC v. ThreeSixty Brands Grp. LLC,* No. 21-cv-8232, 2022 WL 4628757, at *9, 2022 U.S. Dist. LEXIS 179370, at *23

(S.D.N.Y. Sept. 30, 2022). Even assuming that Plaintiffs' allegations that Defendants breached their obligations by "(1) failing to announce/advertise the concert outside the venue on the day of the show; (2) providing incorrect information on the State Fair's website leading people to believe the concert was ending prior to midnight on New Year's Eve, when in fact the concert was scheduled to end at 1:00 a.m.; (3) failing to list ticket information on the State Fair's event page so that tickets could not be purchased on the day of the concert; and (4) removing prematurely the concert information from the State Fair's event page prior to the show," (Dkt. No. 21, at 13–14), this constituted interference with Plaintiffs' relationship with the general public, and Plaintiffs' "generic references" to relationships with prospective concertgoers do not suffice to establish the existence of specific business relationships. *See Camelot SI, LLC*, 2022 WL 4628757, at *9, 2022 U.S. Dist. LEXIS 179370, at *23–24; *POSCO Energy Co.*, 560 F. Supp. 3d at 760. Accordingly, Plaintiffs' claim for tortious interference with business relationships is dismissed as to State Defendants.

## V.    LEAVE TO AMEND

In response to State Defendants' motion to dismiss, Plaintiffs request permission to replead. (Dkt. No. 21, at 14–15.) Plaintiffs seek permission to replead with "additional facts" to the extent that their claims require additional facts. State Defendants oppose this request. (Dkt. No. 14–15.) State Defendants note that Plaintiffs amended their original complaint as a matter of course pursuant to Rule 15(a)(1)(B) following State Defendants' first motion to dismiss, and they object to giving Plaintiffs "a *third* bite at the apple, with the benefit of having heard [the State] Defendants' arguments twice as to why their pleadings failed to state a claim." (Dkt. No. 22, at 14).

Under Federal Rule of Civil Procedure 15(a), a party that has already "amend[ed] its pleading once as a matter of course" may amend its pleading only with the opposing party's

written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). Rule 15(a)(2) requires that a

court "freely give leave when justice so requires." But the court may, in its discretion, deny leave

to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the

opposing party." *MSP Recovery Claims, Series LLC, v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d

Cir. 2023).

Here, there is no evidence of bad faith. The Court notes that any amendment as to the

claims under § 1983, § 1985 and § 1986 as to State Defendants would, however, be futile. While

Plaintiffs do not appear to have a viable tortious interference with business claim, it is

conceivable that the Plaintiffs may be able to allege additional facts that would support one or

more of their state-law claims. Accordingly, Plaintiffs are granted leave to amend except that

Plaintiffs may not amend their claims under § 1983, § 1985, or § 1986 with regard to State

Defendants.

## VI.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that State Defendants' motion to dismiss, (Dkt. No. 20), is **GRANTED**; and

it is further

**ORDERED** that all claims against Defendants State of New York, New York

Department of Agriculture and Markets, and New York State Fair are **DISMISSED**; and it is

further

**ORDERED** that Plaintiffs' request for leave to amend, (Dkt. No. 21, at 14–15), is

**GRANTED in part**. Plaintiffs are granted leave to amend except that Plaintiffs may not amend

their claims under § 1983, § 1985, or § 1986 with regard to State Defendants. Plaintiffs must file

their second amended complaint by **June 20, 2023**.

**IT IS SO ORDERED.**

Dated: <u>May 30, 2023</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge